IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY AND CYNTHIA BISHOP, § | | |
| GEORGE AND DEBORAH CLARK, § | | |
| KRIS B. HALL, HOLLY J. JONES, § | | |
| GARY AND TERI MCGREGOR, § | | |
| SOLEDAD PINEDA, JOHN STANFORD, § | | |
| JR. AND CAROL M. SEVERANCE, § | | |
| *Plaintiffs* § | | |
| § | | |
| vs. § | CAUSE NO._____ | |
| § | | |
| § | | |
| § | | |
| § | | |
| CITY OF GALVESTON, TEXAS § | | |
| AND TEXAS DEPARTMENT OF § | | |
| PUBLIC SAFETY, § | | |
| *Defendants* § | | |

## ORIGINAL COMPLAINT

COME NOW, Plaintiffs, LARRY BISHOP and CYNTHIA BISHOP, GEORGE CLARK and DEBORAH CLARK, KRIS B. HALL, HOLLY J. JONES, GARY MCGREGOR and TERI MCGREGOR, SOLEDAD PINEDA, JOHN STANFORD, JR. and CAROL M. SEVERANCE, hereinafter referred to as "Plaintiffs", and file this their Original Complaint, and would respectfully show the Court the following:

### I. NATURE OF CASE

1.  The Plaintiffs are all owners of homes located in The Sands of Kahala Beach subdivision located on the west end of Galveston Island. The Plaintiffs' homes were damaged by Hurricane Ike and were determined by the City of Galveston to qualify for acquisition under the Federal Hazard Mitigation Grant Program ("HMGP"). After the determination was made that

1

each Plaintiff's home qualified and was approved by the City of Galveston, Texas Department of Public Safety, Mitigation Section of the Texas Division of Emergency Management and FEMA, each Plaintiff was to have entered into an agreement under the terms of the Stafford Act with the City of Galveston wherein the City of Galveston, as a Sub-grantee of the State of Texas (Grantee of FEMA), was to acquire the homes and, subsequent to such acquisition, the property returned to its natural state and its use confined to the restrictions as set forth in the Stafford Act.

2. Plaintiffs, as "participants", and their respective real properties met all of the qualifications, were approved for and are entitled to receive the grant monies under the HMGP and, but for the actions of the City of Galveston and the Texas Department of Public Safety, would have received the funds long ago.

3. This action and the relief requested are authorized under 28 U.S.C. § 2201, 28 U.S.C. § 2202, 42 U.S.C. §§ 1983 & 1985, 42 U.S.C. § 5170(c) and the Federal Regulations promulgated there under, and the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution.

## II. JURISDICTION AND VENUE

4. Jurisdiction of this Court against the Defendants is invoked pursuant to 28 U.S.C. § 1331. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) and (b) in that all of the claims arose in this district.

## III. PARTIES

**A.   Plaintiffs**

5. Plaintiffs George and Deborah Clark ("Clarks") and Larry and Cynthia Bishop ("Bishops") are individuals and joint owners of real property commonly referred to as 11851 Sunbather Lane, Galveston, Galveston County, Texas (collectively, the Bishops and the

Clarks are referred to as "Bishop-Clark"). The City of Galveston has agreed to acquire the real property commonly referred to as 11851 Sunbather Lane, Galveston, Galveston County, Texas, from Bishop-Clark jointly for $868,541.73. The Flood Damaged Property Contract For Sale with the City of Galveston was entered into on January 11, 2010.

6. Plaintiffs Kris B. Hall and Holly J. Jones (collectively, "Halls") are individuals and joint owners of real property commonly referred to as 11832 Sunbather Lane, Galveston, Galveston County, Texas. The City of Galveston has agreed to acquire the Halls' property for $789,110.96. The Halls' Flood Damaged Property Contract For Sale with the City of Galveston was entered into on September 15, 2009.

7. Plaintiffs Gary and Teri McGregor ("McGregors") are individuals and joint owners of real property commonly referred to as 11827 Sunbather Lane, Galveston, Galveston County, Texas. The City of Galveston had agreed to acquire the McGregors' property for $886,762.38. The McGregors' Flood Damaged Property Contract For Sale with the City of Galveston was entered into on or about September 15, 2009.

8. Plaintiff John Stanford, Jr. ("Stanford") is an individual and an owner of real property commonly referred to as 11855 Sunbather Lane, Galveston, Galveston County, Texas. The City of Galveston had agreed to acquire Stanford's property since it qualified under the HMGP although no Flood Damaged Property Contract For Sale has been executed by the parties.

9. Plaintiff Soledad Pineda ("Pineda") is an individual and an owner of real property commonly referred to as 11847 Sunbather Lane, Galveston, Galveston County, Texas. The City of Galveston has agreed to acquire Pineda's property since it qualified under the HMGP and a Flood Damaged Property Contract For Sale has been executed by the parties.

10. Plaintiff Carol M. Severance ("Severance") is an individual and an owner of real property commonly referred to as 11825 Sunbather Lane, Galveston, Galveston County, Texas. The City has agreed to acquire Severance's property for $812,508.69. Severance's Flood Damaged Property Contract For Sale with the City of Galveston was entered into on September 15, 2009.

**B.     Defendants**

11. Defendant City of Galveston, Texas ("City of Galveston"), is a municipality situated in Galveston County, Texas. Citation may be served upon the City Secretary, City Hall, 823 Rosenberg, Suite 201, Galveston, Texas 77550.

12. Defendant Texas Department of Public Safety ("Texas DPS") is a state agency of Texas. Citation may be served upon its Director, Steven C. McCraw, 5805 North Boulevard, Austin, Texas 78773. The Texas Division of Emergency Management is a division of the Texas DPS.

## IV. FACTUAL BACKGROUND

13. The Plaintiffs are all owners of homes ("Real Property") currently located in what is commonly referred to as The Sands of Kahala Beach, a subdivision located on the west end of Galveston Island, City and County of Galveston, Texas (the "Subdivision"). The Plaintiffs, along with other citizens along the upper Texas Gulf Coast, suffered damage and loss to their Real Property due to Hurricane Ike.

14. Due to the damage caused by Hurricane Ike, the Plaintiffs' Real Property qualified for acquisition under the HMGP. The Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") (42 U.S.C. 5101, *et seq*.) is a 1988 amended version of the Disaster Relief Act of 1974 (Pub.L. 93-288). Congress amended it by passing the Disaster

4

Mitigation Act of 2000 (Pub.L. 106-390). This act constitutes the statutory authority for most federal disaster response activities especially as they pertain to FEMA and FEMA programs.

15. Section 404 of the Stafford Act (42 U.S.C. §5170c) authorizes the HMGP which provides grants to state and local governments to reduce the risk of future damage, hardship, and loss from all hazards. The HMGP allows applicants/grantees to acquire certain flood damaged properties in the Subdivision. The purpose of the HMGP is to reduce future property loss due to natural disasters.

16. Pursuant to §§ 621 and 702 of the Stafford Act (42 U.S.C. § 5197(g) and § 5201(a)(1)), only the President of the United States and/or the Director of the Federal Emergency Management Agency are authorized to prescribe rules and regulations "as may be necessary and proper to carry out any of the provisions" of the Stafford Act.

17. The State of Texas Mitigation Plan adopted by the State of Texas on October 25, 2007, states that "The State of Texas will comply with all applicable Federal Statutes and regulations in effect with respect to the periods for which it receives grant funding, in compliance with 44 Code of Federal Regulations (CFR) §13.11c."

18. Hurricane Ike struck the upper Texas gulf coast on September 13, 2008. On January 22, 2009, the Galveston City Council approved and authorized the City Manager to proceed with the application process for the application of HMGP funds for the purpose of purchasing certain beach front homes that were damaged by Hurricane Ike with "the local grant share to be paid by others besides the city."

19. The Plaintiffs made application and their Real Property was determined by the City of Galveston to qualify for acquisition under the HMGP. In each case, the City of Galveston confirmed in writing by letters dated January 22, 2009, January 26, 2009 February 11, 2009,

5

February 17, 2009, October 28, 2009, and March 5, 2010 ("SDD Letters"), that: "[i]n accordance with these regulations [National Flood Insurance Program], the City of Galveston conducted substantial damage determinations for residential structures built in the special flood hazard area. Based on this inspection, the City has determined the property . . . was substantially damaged by Hurricane Ike on September 13, 2008."

20. At some point subsequent, the City of Galveston actually made application to receive funds to acquire real property under the HMGP including the Real Property. The City of Galveston made a grant application to the Texas Department of Public Safety, Texas Division of Emergency Management, for funds to be utilized to acquire the Real Property at issue herein. The funds to acquire the Real Property were obtained as follows: (i) 75% from FEMA through the HMGP; and (ii) $65,000.00 per home from the Texas General Land Office. None of the funds at issue herein actually come from the City of Galveston and/or the Texas DPS.

21. On July 23, 2009, the U. S. Department of Homeland Security, FEMA Region 6, notified Jeff Colley, Chief of the State of Texas Governor's Division of Emergency Management, that the City of Galveston had been awarded a grant in the amount of Fifteen Million Three Hundred Thirty-Three Thousand Seven Hundred Seventy and 00/100 Dollars ($15,333,770.00) which was made available to them through the HMGP under FEMA Project No. 1791-DR-TX for the acquisition and demolition of certain properties.

22. On July 31, 2009, Lyda Ann Thomas, then Mayor of the City of Galveston, was notified by Mr. Colley that the funds had been approved by FEMA and the State of Texas under Project No. DR-1791-012 in the amount of Fifteen Million Three Hundred Thirty-Three Thousand Seven Hundred Seventy and 00/100 Dollars ($15,333,770.00). (FEMA Project No. 1791-DR-TX and State of Texas under Project No. DR-1791-012 are referred to as "Project 12").

23. The City of Galveston was concurrently notified that it also received Five Million Four Hundred Fifty-Six Thousand Thirty-Two and 00/100 Dollars ($5,456,032.00) through FEMA and the State of Texas for Project No. DR-1791-013. (FEMA Project No. 1791-DR-TX and State of Texas under Project No. DR-1791-013 are referred to as "Project 13"). Attached to each notification of funding is a list of the real properties, which qualified, and that FEMA had approved for acquisition, including that of the Plaintiffs. Four (4) of the six (6) Real Properties at issue herein were approved to be acquired under Project 12 and the other one (1) was approved to be acquired under Project 13.

24. In this case, the Texas DPS was the "Applicant" applying to FEMA for a grant; however, once grants funds are awarded, the Texas DPS became the "Grantee." The City of Galveston then becomes the "Sub-applicant" and, once funding is awarded, becomes the "Sub-grantee." The FEMA Guidelines, § 2.3.13.1 states that "Federal assistance (including HMGP grants) distributed by . . . local governments [are] to be implemented in compliance with all applicable laws" and that a "project may not be framed in a manner that has the effect of circumventing these requirements." "This section . . . is also applicable to HMGP."

25. Under the terms of the HMGP grants, DR 1791-012 and DR1791-013 (collectively "FEMA Grants"), the City of Galveston was to acquire a total of 62 homes. As of August 31, 2011, the City of Galveston has acquired all but the six (6) homes owned by the Plaintiffs. As noted in the notification letters from FEMA, "[t]he Projects must be completed within twenty-four (24) months from the Project approval date.

26. Therefore, as of July 31, 2009, Plaintiffs had a vested property interest in the receipt of the funds which FEMA had granted for the acquisition of their Real Property. Additionally, in the July 23, 2009, letter from FEMA to Jeff Colley, Chief of the State of Texas

Governor's Division of Emergency Management, it states that: "[o]nce drawn down by the Grantee, the funds must be distributed in this manner."

27.     Subsequent to the approval of the grant from FEMA through the Texas DPS, Plaintiffs executed the Grant Agreements with the City of Galveston to purchase their Real Property.

28.     The Bishop-Clark's Flood Damaged Property Contract For Sale with the City of Galveston was entered into on January 11, 2010, to acquire the Bishop-Clark Real Property for $868,541.73.

29.     The Halls' Flood Damaged Property Contract For Sale with the City of Galveston was entered into on September 15, 2009, to acquire the Hall's Real Property for $789,110.96.

30.     The McGregors' Flood Damaged Property Contract For Sale with the City of Galveston was entered into on or about September 15, 2009, to acquire the McGregors' Real Property for $886,762.38.

31.     The City of Galveston has agreed to acquire Pineda's property since it qualified under the HMGP although no Flood Damaged Property Contract For Sale has been executed. The purchase price is seventy-five percent (75%) of the pre-Hurricane Ike appraised value plus Sixty-Five Thousand Dollars ($65,000.00) less any insurance reimbursements.

32.     The City of Galveston has agreed to acquire Stanford's property since it qualified under the HMGP although no Flood Damaged Property Contract For Sale has been executed. The purchase price is seventy-five percent (75%) of the pre-Hurricane Ike appraised value plus Sixty-Five Thousand Dollars ($65,000.00) less any insurance reimbursements.

33. The City of Galveston has agreed to acquire Severance's property. Severance's Flood Damaged Property Contract For Sale with the City of Galveston was entered into on September 15, 2009, to acquire the Severance Real Property for $812,508.69.

34. On the date of the execution of each Flood Damaged Property Contract For Sale with the City of Galveston, the Plaintiffs had met all of the requisite requirements and/or qualifications of the Stafford Act and were entitled to receive the HGMP funds.

35. However, beginning as early as August 2009, other owners of homes located in the Subdivision along with the City of Galveston and the Texas DPS engaged in a campaign to prevent the Plaintiffs from participating in the HMGP and otherwise making allegations that the Plaintiffs' Real Property did not qualify, along with numerous threats of litigation against the City of Galveston.

36. After the City of Galveston approved the acquisition of the Plaintiffs' Real Property, it demanded, in addition to the applicable rules, regulations and guidelines of the HMGP, that they obtain a release from The Sands of Kahala Beach HOA, Inc. ("HOA") affirming that the City of Galveston would not be required to pay any maintenance fees provided for in the deed restrictions applicable to the Subdivision. This demand was arbitrary and not related to any legitimate governmental interest of the City of Galveston, but was an act intended to delay and prevent the Plaintiffs from receiving the HMGP funds. As a governmental subdivision, a municipality, the City of Galveston would have had immunity from such claims and there was therefore no need for a release. Furthermore, the Plaintiffs at all times had offered and were ready, willing and able to indemnify the City of Galveston for any such claims(s) had any actually been asserted.

37. No other grantee and/or sub-grantee has ever required any type of release and/or imposed any other conditions upon a participant in the HMGP outside of those required in the Stafford Act. The City of Galveston never really intended nor has it ever proceeded with acquiring the Plaintiffs' Real Property.

38. On June 30, 2011, with only twenty-three (23) days remaining from the original project completion date, the City of Galveston made a request that the FEMA Grants be extended through August 31, 2011. This request was made after the City of Galveston was notified by the Texas DPS on June 29, 2011, that it had received an inquiry from a Special Agent with the U.S. Department of Homeland Security, Office of the Inspector General, concerning "potential fraud involving five (5) of the properties that have not yet been purchased". The City of Galveston had been directed by the Texas DPS to "cease all activities concerning the purchase" of those properties pending further investigations. The five properties which were the subject of the investigation were those of five of the Plaintiffs.

39. At some point prior to June 30, 2011, allegations were made by owners of homes located in the Subdivision to various law enforcement agencies including the U.S. Department of Homeland Security and the FEMA Fraud Hotline that the Plaintiffs had used inflated and/or fraudulently obtained estimates of the damages of their Real Property and did not otherwise qualify for the HMGP even though the City of Galveston had stated in previous letters to Plaintiffs that they had determined that the Plaintiffs' Real Property qualified and was otherwise eligible. These same allegations had been made to both FEMA and the City of Galveston on numerous previous occasions as far back as August 2009.

40. On August 8, 2011, the City of Galveston, through its counsel, notified the Plaintiffs that they were to have closed on the sale of their Real Property prior to August 1, 2011.

The City of Galveston claimed it needed thirty (30) days in which to fulfill its obligations under the HMGP. The 30-day requirement alleged by the City of Galveston is arbitrary, self-imposed, and not otherwise a requirement of or related to the HMGP and/or the FEMA Grants.

41.    At all times prior to April 30, 2010, and subsequent to August 5, 2011, the Plaintiffs had met all of the qualifications to entitle them to receive the HMGP funds and could otherwise fulfill any obligations required for receipt of the funds, but the City of Galveston refused to acquire the Real Property. Although the Plaintiffs had clear title at the time, on August 8, 2011, the City of Galveston again refused to close, citing the need for thirty (30) days and the pending investigation by the State of Texas.

42.    The Plaintiffs were never aware of any thirty (30) day deadline. Furthermore, the City of Galveston could and would have been granted an extension of time if the City of Galveston required additional time to acquire Plaintiffs' Real Property. The previous request was made within twenty-one (21) days of the previous expiration of the FEMA Grants.

43.    The investigation by Texas DPS was concluded and a "report" issued. On October 25, 2011, a letter ("Report") to Mr. Perry, Special Agent, U.S. Department of Homeland Security prepared by W. Nim Kidd, Assistant Director of Texas Department of Public Safety, regarding the substantial damage determination ("SDD") conducted by the City of Galveston was sent to the City of Galveston. Although the City of Galveston already conducted a SDD, the Report suggests that "the State [Texas DPS] will require new substantial damage determination reviews by qualified staff before those addresses will be allowed to participate."

44.    According to the Report, there were eighteen (18) homes which qualified using the same methodology as the Plaintiffs. Thirteen (13) of the eighteen (18) homes have already been purchased and demolished and were therefore not subject to review by the Texas DPS. The

City of Galveston also conducted SDD on the thirteen (13) homes and also determined that they qualified for participation in the HMGP. However, during the time the "investigation" was conducted, one of the eighteen (18) properties was acquired and demolished isolating the "investigation" to the Plaintiffs.

45.     Up until the Report was released, Plaintiffs had never received any communication from the City of Galveston indicating that they had any information that the SDD's the City of Galveston had conducted were irregular and/or questionable. The SDD's were not made and/or approved by the Plaintiffs. These SDD's were conducted as required by the City of Galveston by contractors licensed by and approved by the City of Galveston. The contractors whose estimates the City of Galveston used in determining the SDD utilized a bid form which had been prepared and approved by the City of Galveston's Department of Planning and Community Development.

46.     What has existed for at least the last two (2) years is a concerted effort between the City of Galveston, certain owners of homes located in the Subdivision, and the Texas DPS to deny Plaintiffs their respective rights to participate in the HMGP. The City of Galveston and the Texas DPS have and continue to discriminate against the Plaintiffs by requiring them to qualify under or meet a new threshold not required by other participants in the HMGP.

## V. CAUSES OF ACTION

47.     Plaintiffs, having qualified for and been approved for the FEMA Grants, have a constitutionally protected property interest. In the instant case, the Plaintiffs had unilateral expectation of receiving the FEMA Grants and have a legitimate claim of entitlement to those funds. Plaintiffs have no other remedy for their losses through any other judicial process.

12

## FIRST CAUSE OF ACTION
(Procedural Due Process Violation)

48. Plaintiffs re-allege and incorporate herein by reference the allegations of paragraphs 13 through 46 of the Complaint as set forth above.

49. Plaintiffs, their Real Property having been determined to qualify for and having been approved to receive the HMGP funds, have a protectable property interest.

50. The Due Process clause of the Fifth Amendment of the United States Constitution prohibits individual(s) including the City of Galveston and the Texas DPS from employing arbitrary procedure(s) designed to prevent and/or inhibit the Plaintiffs from receiving the FEMA Grants.

51. Defendants City of Galveston and/or the Texas DPS have subjected the Plaintiffs to interminable delays, bureaucratic red tape and have otherwise done everything conceivable to obstruct, impair, and prevent the Plaintiffs from receiving their FEMA Grants.

52. The actions on the part of the City of Galveston and/or the Texas DPS amount to deprivation of a property interest without notice and due process and, as a result, the City of Galveston and/or the Texas DPS have violated the rights guaranteed by the Fifth Amendment of the United States Constitution, U.S. Const. Amend. 5.

53. Plaintiffs' property interests were created by existing rules that secured certain benefits and that support claims of entitlement to those benefits. Plaintiffs have a legitimate claim of entitlement to the FEMA Grants.  Furthermore, Plaintiffs have no post-deprivation remedy.

54. As a result, Plaintiffs have been damaged and seek to recover the loss of FEMA Grant funds currently owed per the terms of the Grant Agreements in an amount of not less than Five Million Five Hundred Thousand and 00/100 Dollars ($5,500,000.00).

## SECOND CAUSE OF ACTION
(Substantive Due Process Violation)

55. Plaintiffs re-allege and incorporate herein by reference the allegations of paragraphs 13 through 46 of the Complaint as set forth above.

56. Plaintiffs, their Real Property having been determined to qualify for and having been approved to receive the HMGP funds, have a protectable property interest.

57. The Due Process clause of the Fifth Amendment of the United States Constitution prohibits individual(s) including the City of Galveston and/or the Texas DPS from employing arbitrary procedure(s) designed to prevent and/or inhibits the Plaintiffs from receiving the FEMA Grants.

58. Defendants City of Galveston City of Galveston and/or the Texas DPS has subjected the Plaintiffs to interminable delays, bureaucratic red tape and has otherwise done everything conceivable to obstruct, impair, and prevent the Plaintiffs from receiving their FEMA Grants.

59. The actions on the part of the Galveston City of Galveston and/or the Texas DPS amount to depravation of a property interest of the Plaintiffs. The City of Galveston and/or the Texas DPS have engaged in conduct that was clearly arbitrary and conscience shocking and has violated the substantive due process rights guaranteed by the Fifth Amendment of the United States Constitution, U.S. Const. Amend. 5.

60. Plaintiffs have no remedy at law adequate to prevent the wrongdoing on the part of the Galveston City of Galveston and/or the Texas DPS.

61. As a result, Plaintiffs have been damaged and seek to recover the loss of FEMA Grant funds currently owed per the terms of the Grant Agreements in an amount of not less than Five Million Five Hundred Thousand and 00/100 Dollars ($5,500,000.00).

## THIRD CAUSE OF ACTION
(Violations of 48 U.S.C. § 1983, *et seq*.)

62. Plaintiffs re-allege and incorporate herein by reference the allegations of paragraphs 14 through 46 of the Complaint as set forth above.

63. Plaintiffs, their Real Property having been determined to qualify for and having been approved to receive the HMGP funds, have a protectable property interest.

64. Defendants Galveston City of Galveston and/or the Texas DPS engaged in a course of conduct beginning as early as August of 2009 intended to prevent the Plaintiffs from receiving their FEMA Grants.

65. Such conduct violates 42 U.S.C. § 1983, *et seq.,* and has deprived the Plaintiffs of their property interests granted to them under the Stafford Act. Plaintiffs had a constitutionally protected property interest and, as a result of the actions of Defendants Galveston City of Galveston and/or the Texas DPS, have been deprived of that interest.

66. As a result, Plaintiffs have been damaged and seek to recover the loss of FEMA Grant funds currently owed per the terms of the Grant Agreements in an amount of not less than Five Million Five Hundred Thousand and 00/100 Dollars ($5,500,000.00).

## FOURTH CAUSE OF ACTION
(Violations of 48 U.S.C. § 1985, *et seq*.)

67. Plaintiffs re-allege and incorporate herein by reference the allegations of paragraphs 13 through 46 of the Complaint as set forth above.

68. Plaintiffs, their Real Property having been determined to qualify for and having been approved to receive the HMGP funds, have a protectable property interest.

69. Defendants Galveston City of Galveston and/or the Texas DPS have engaged in a course of conduct beginning as early as August of 2009 to make a concerted effort with the intent of denying the Plaintiffs from receiving their FEMA Grants.

70. Such conduct constitutes a conspiracy to violate the rights guaranteed to the Plaintiffs and is in violation of 42 U.S.C. § 1985, *et seq.,* and the actions of the Galveston City of Galveston and/or the Texas DPS have deprived the Plaintiffs of their property interest granted to them under the Stafford Act.

71. As a result, Plaintiffs have been damaged and seek to recover the loss of FEMA Grant funds currently owed per the terms of the Grant Agreements in an amount of not less than Five Million Five Hundred Thousand and 00/100 Dollars ($5,500,000.00).

## Declaratory Relief

72. An actual controversy exists between Plaintiffs and Defendants City of Galveston and/or the Texas DPS in that Plaintiffs contend that the arbitrary conditions, delays, and impediments as set forth herein violated the Stafford Act, the Federal Regulations promulgated thereunder, and the United States Constitution. Unless there is a judicial declaration of Plaintiffs' rights, the unlawful conduct of Defendants Galveston City of Galveston and/or the Texas DPS will continue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs LARRY BISHOP and CYNTHIA BISHOP, GEORGE CLARK and DEBORAH CLARK, KRIS B. HALL, HOLLY J. JONES, GARY MCGREGOR and TERI MCGREGOR, SOLEDAD PINEDA, JOHN STANFORD, JR. and CAROL M. SEVERANCE request that the Court enter a judgment as requested herein for actual damages of not less than Five Million Five Hundred Thousand and 00/100 Dollars ($5,500,000.00), statutory

damages, exemplary damages, to recover their costs and attorney's fees and post-judgment interest at the highest rate allowed by law, and for such other and further relief, special or general, at law or in equity, to which Plaintiffs may show themselves justly entitled.

DATED:  December 1, 2011

    Respectfully submitted,

/s/Kyle Dickson
Kyle L. Dickson
Southern District Bar No. 13441
State Bar No. 05841310
McFatridge, Baker & Schmidt, P.C.
2228 Mechanic, Suite 220
Galveston, Texas 77550
Tel: (409) 766-7966
Fax: (409) 766-7955
kdickson@mbslawyer.com

**ATTORNEYS FOR LARRY AND CYNTHIA BISHOP, GEORGE AND DEBORAH CLARK, KRIS B. HALL, HOLLY J. JONES, GARY AND TERI MCGREGOR, SOLEDAD PINEDA, JOHN STANFORD, JR., AND CAROL M. SEVERANCE**