IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY BISHOP, CYNTHIA BISHOP,      §
GEORGE CLARK, DEBORAH CLARK,       §
KRIS B. HALL, HOLLY J. JONES,      §
GARY MCGREGOR, TERI MCGREGOR,      §
SOLEDA PINEDA, JOHN STANFORD,      §
JR., and CAROL M. SEVERANCE,       §
                                   §
          Plaintiffs,              §
                                   §
VS.                                §   CIVIL ACTION H-11-4152
                                   §
CITY OF GALVESTON, TEXAS, STEVEN§
C. MCCRAW, in his official         §
capacity as the Director of the    §
Texas Department of Public         §
Safety, JEFF COLLEY, in his        §
official capacity as the Chief     §
of the Emergency Management        §
Department of the Texas Depart-    §
ment of Public Safety, GREG        §
PEKAR, in his official capacity    §
as the State Hazard Mitigation     §
Officer of the Emergency           §
Management Division of the Texas§
Department of Public Safety, and§
HILDA SOPER, in her official       §
capacity as an employee of the     §
Emergency Management Division of§
the Texas Department of Public     §
Safety,                            §
                                   §
          Defendants.              §

## OPINION AND ORDER OF DISMISSAL

The above referenced cause, grounded in the Fourteenth
Amendment and 42 U.S.C. § 1983, alleges deprivation without due
process of funds authorized and approved pursuant to the Stafford

Act[1] and Federal Hazard Mitigation Grant Program ("HMGP") for acquisition of Plaintiffs' homes in The Sands of Kahala Beach subdivision on the west end of Galveston Island, which were damaged by Hurricane Ike.  Pending before the Court is a motion to dismiss (instrument #19) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filed by Defendants Steven C. McCraw, in his

---

[1] The Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5101, *et seq.,* as discussed by United States District Judge Carl J. Barbier in *Orleans Parish Communication Dist. v. Federal Emergency Management Agency*, Civ. A. No. 11-209, 2011 WL 4829887, *2-3 (E.D. La. Oct. 12, 2011), was passed by Congress

> to provide a means of assistance by the federal government to state and local governments in carrying out their responsibilities to alleviate suffering and damage resulting from disasters.  *See* 42 U.S.C. § 5121(b). Implementation of the Stafford Act has been delegated to FEMA, which retains discretion in the determination of eligibility for and distribution of public assistance to affected state and local entities in such disasters. This discretion stems from the permissive language of the Stafford Act, which expressly affirms FEMA's sovereign immunity under the "discretionary function exception" to the Act.  The exception provides:

>> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148.  *See St. Tammany Parish v. FEMA*, 55 F.3d 307, 318 (5th Cir. 2009)(The Stafford Act does not contain a waiver of federal sovereign immunity; it does have a discretionary function exception that protects the government from liability for claims based on its discretionary conduct).

-2-

official capacity as Director of the Texas Department of Public Safety ("DPS"), W. M. Nim Kidd, in his official capacity as Chief of the Division of Emergency Management, Division of DPS,[2] Greg Pekar, in his official capacity as the State Hazard Mitigation Officer of the Emergency Management Division of the DPS, and Hilda Soper, in her official capacity as an employee of the Division of Emergency Management at DPS (collectively, "DPS Officials").

**Allegations of the Second Amended Complaint (#17)**

Plaintiffs own homes in The Sands of Kahala, a subdivision on the west end of Galveston Island in the City and County of Galveston, Texas. Their real property was damaged by Hurricane Ike on September 13, 2008. President Bush declared Galveston County, *inter alia*, to be a disaster area and thus automatically qualified it under the Stafford Act for individual assistance, including under the HMGP, which is authorized under Section 404 of the Stafford Act, 42 U.S.C. § 5170c, to provide grants to state and local governments to reduce the risk of future damage, hardship, and loss from all hazards. The HMGP permits applicants/grantees to acquire flood-damaged property.

---

[2] After the death of Jeff Colley, W.M. Nim Kidd was appointed Chief of the Division of Emergency Management as of July 1, 2010 and, pursuant to Federal Rule of Civil Procedure 25(d), was automatically substituted in this action for Defendant Colley.
Defendant the Texas Department of Public Safety was dismissed without prejudice on February 15, 2012 (#11).
Defendant Soledad Pineda was dismissed on December 3, 2012 (#23).

On January 22, 2009 the Galveston City Council approved and authorized the Galveston City Manager to proceed with an application for HMGP funds to purchase certain beach front homes, with "the local grant share to be paid by others besides the city." Plaintiffs applied and, after inspections, their real properties were determined by the City to qualify for acquisition under the HMGP, as confirmed by letters from the City ("Substantial Damage Determinations" or "SDD Letters"). The City subsequently applied to the Texas DPS, Texas Division of Emergency Management, for the funds under the HMGP. Of the funds obtained by the City, 75% came from FEMA through the HMGP and $65,000 per home from the Texas General Land Office; none of the funds came from the City of Galveston ("the City").[3]  On July 23, 2009 the United States Department of Homeland Security, FEMA Region 6, notified Defendant Colley, then Chief of the State of Texas Governor's Division of Emergency Management, that the City of Galveston had been awarded a grant in the amount of $15,333,770 for acquisition and demolition of certain property through the HMGP under FEMA Project No. 1791-DR-TX.  Colley informed Lyda Ann Thomas, then Mayor of the City, of the grant on July 31, 2009. Plaintiffs contend that as of July 31, 2009, they had a vested property interest in the receipt of these

_____

[3] When Texas DPS applied to FEMA for the grant, it was characterized as the "Applicant";  once the funds were approved by FEMA and the State of Texas under FEMA Project No. DR-1791-012, DPS became the "Grantee" and the City of Galveston the "Sub-applicant"; once the funding was awarded, the City became the "Sub-grantee."

-4-

funds.

Under the terms of the grants, the City was to acquire a total of 62 homes.  As of August 31, 2011, the City had acquired all but the six homes owned by Plaintiffs.  The notification letters from FEMA stated, "The Projects must be completed within twenty-four (24) months from the Project approval date."  Plaintiffs executed Grant Agreements with the City of Galveston to purchase their properties.

On January 11, 2010, a Bishop-Clark Flood Damaged Property Contract for Sale with the City for $868,541.73 was signed.  On September 15, 2009 the Halls' contract for sale for $789,110.96 was executed.  On or about the same day the McGregors' contract was entered into for $886,762.38, and Severance's was entered into for $812,508.69.  The City also agreed to acquire Pineda's property and Stanford's property for 75% of their pre-Hurricane Ike appraised values plus $65,000, less any insurance reimbursements.  At the time that each contract was executed, Plaintiffs maintain that they met all requirements or qualifications under the Stafford Act and were entitled to receive the funds.

Nevertheless in August 2009, owners of other homes in the subdivision along with the City of Galveston and the DPS Officers began campaigning to prevent Plaintiffs from participating in the HMGP, making allegations that the properties did not qualify and threatening litigation against the City.  Despite its prior

approval of the acquisition of Plaintiffs' properties, the City arbitrarily demanded that Plaintiffs obtain a release from The Sands of Kahala Beach Home Owners Association, Inc. ("HOA") affirming that the City of Galveston would not be required to pay any maintenance fees provided for in the deed restrictions applicable to the Subdivision.  Plaintiffs claim that this action was intended to delay and prevent Plaintiffs from receiving the HMGP funds because, as a governmental subdivision, a municipality, the City would have immunity from such claims so there was no need for such a release.  No other grantee and/or sub-grantee has been required to obtain any type of release and/or have any other conditions been imposed upon a participant in the HMGP beyond those required by the Stafford Act.  Plaintiffs assert that Galveston never intended to proceed, nor has it proceeded, with acquisition of Plaintiffs' real properties.

On June 29, 2011, Defendant Pekar notified the City that he had received an inquiry from a Special Agent with Homeland Security, Office of the Inspector General, concerning "potential fraud" involving five of the not-yet-purchased properties and directing the City to "cease all activities concerning the purchase."  On June 30, 2011, with only 23 days remaining from the original project completion date, the City requested that the FEMA grants be extended through August 31, 2011.  The complaint states that at some point before June 30, 2011 owners of homes in the

Subdivision made allegations to various law enforcement agencies, including the Department of Homeland Security and the FEMA Fraud Hotline, that Plaintiffs had used inflated or fraudulently obtained estimates of their real properties and did not otherwise qualify for the HMGP funds.

On August 8, 2011 counsel for the City notified Plaintiffs that they were to have closed on the sales of their real properties before August 1, 2011. Moreover the City arbitrarily imposed a 30-day period for it to meet its obligations under the HMGP, which was not required by or related to the HMGP and/or the FEMA grants. Plaintiffs maintain that they met all qualifications for entitlement to the funds during the relevant time. The City has refused to acquire Plaintiffs' real properties and to close.

On October 25, 2011 Texas DPS, through Defendant Kidd, issued a report on the purported investigation to Special Agent Perry of Homeland Security about the SDD conducted by the City. The report, with no finding of fraud by any Plaintiff, stated that DPS "will require new substantial damage determination reviews by qualified staff before those addresses will be allowed to participate." Up until then, Plaintiff had never received any notification from the City or DPS that the City's SDDs were irregular or questionable. Plaintiffs were not given an opportunity to submit new SDDs and/or otherwise prove their entitlement to the HMGP funds, nor to participate in the alleged investigation, nor notified and afforded

an opportunity to be heard at any of these proceedings.  Instead their right to participate in the HMGP has been thwarted for at least three years by a concerted effort involving the City, owners of other homes in the Subdivision, and DPS officials.

Plaintiffs allege violations of procedural and substantive due process under the Fourteenth Amendment and 42 U.S.C. § 1983, and they seek monetary damages, declaratory relief, and prospective injunctive relief (#17, ¶ 90) requiring

> (a) the DPS Official and/or the City of Galveston to comply with the terms of the Stafford Act and the HMGP and fulfill their obligations therein to remit to the Plaintiffs the FEMA Grant to which they have been previously determined to be qualified for [*sic*] and entitled to by FEMA;

> (b) the DPS Officials and/or the City of Galveston to allow the Plaintiffs to demonstrate their qualifications for and/or entitlement pursuant to the Stafford Act and the HMGP and require the fulfillment of their obligations to remit to the Plaintiffs the FEMA Grant; and

> (c) the DPS Officials to retract or, alternatively, afford Plaintiffs their right to present evidence or otherwise demonstrate their entitlement to and qualifications for receipt of the HMGP Fund.

### Standard of Review

**Federal Rules of Civil Procedure 12(b)(1), 8(a), and 12(b)(6).**

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, No. 11-10264, 2011 WL 3363872, *1 (5th Cir. Aug. 4, 2011),

*quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3).  If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*, 2011 WL 3363872, *1, *quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).  The reasons behind this practice are to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'".  *Id.*, *citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming*, 281 F.3d at 161.

Rule 12(b)(1) allows a party to move for dismissal of an action for lack of subject matter jurisdiction.  The party asserting that subject matter exists, here the plaintiff, must bear the burden of proof for a 12(b)(1) motion.  *Ramming*, 281 F.3d at 161.  In reviewing a motion under 12(b)(1) the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A motion to dismiss for lack of subject matter jurisdiction

under Rule 12(b)(1) is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC,* Bankr. No. 08-10466, Adv. No. 10-1015, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), *citing Rodriguez v. Texas Comm'n of Arts*, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000).  A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  In a facial attack, allegations in the complaint are taken as true. *Blue Water*,  2011 WL 52525 at *3, *citing Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995).

If it is a factual attack, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).  A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Patterson v. Weinberger*, 644 F.3d 521, 523 (5th Cir. 1981).  The plaintiff, to satisfy its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id*.  The court's consideration of such

matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c). *Robinson v. Paulson*, H-06-4083, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 28, 2008), *citing Garcia*, 104 F.3d at 1261. "Unlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).  In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit,[4] has significant authority "'to weigh the

---

[4] As the court explained in *Taylor v. Dam*, 244 F. Supp. 2d 747, 753 (S.D. Tex. 2003),

> It is well settled that "a district court has broader power to decide its own right to hear the case than it has when the merits of the case are reached." [*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.). *cert. denied*, 454 U.S. 897 (1981).] "Jurisdictional issues are for the court--not the jury--to decide, whether they hinge on legal or factual determinations. *Id*.  To determine whether jurisdiction exists, the court will generally resolve any factual disputes from the pleadings and the affidavits submitted by the parties. *See Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985).  The court may also conduct an evidentiary hearing and "may hear conflicting written and oral evidence and decide for itself the factual issues

evidence and satisfy itself as to the existence of its power to hear the case.'" *Robinson v. Paulson*, No. H-06-4083, 2008 WL 4692392, *10 (S.D. Tex. Oct. 22, 2008), *quoting Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and *citing Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

Federal Rule of Civil Procedure 8(a)(2) provides, "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 127

---

which determine jurisdiction." *Williamson*, 645 F.2d at 413; *see Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511-12 (5th Cir.), *cert. denied*, 449 U.S. 953 . . . (1980).

S. Ct. 1955, 1964-65 (2007)(citations omitted).   "Factual
allegations must be enough to raise a right to relief above the
speculative level."  *Id.* at 1965, *citing* 5 C. Wright & A. Miller,
*Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed.
2004)("[T]he pleading must contain something more . . . than . . .
a statement of facts that merely creates a suspicion [of] a legally
cognizable right of action").   "*Twombly* jettisoned the minimum
notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . .
(1957)["a complaint should not be dismissed for failure to state a
claim unless it appears beyond doubt that the plaintiff can prove
no set of facts in support of his claim which would entitle him to
relief"], and instead required that a complaint allege enough facts
to state a claim that is plausible on its face."  *St. Germain v.
Howard,* 556 F.3d 261, 263 n.2 (5th Cir. 2009), *citing In re Katrina
Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)("To survive
a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough
facts to state a claim to relief that is plausible on its face.'"),
*citing Twombly*, 127 S. Ct. at 1974).   "'A claim has facial
plausibility when the pleaded factual content allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged.'"  *Montoya v. FedEx Ground Package System,
Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*,
129 S. Ct. 1937, 1940 (2009).   Dismissal is appropriate when the
plaintiff fails to allege "'enough facts to state a claim to relief

that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'"  *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).  *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken").  Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment.  *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

"Dismissal is proper if the complaint lacks an allegation

regarding a required element necessary to obtain relief . . . ."
*Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006),
*cert. denied*, 549 U.S. 825 (2006).  Dismissal under Federal Rule of
Civil Procedure 12(b)(6) is "appropriate when a defendant attacks
the complaint because it fails to state a legally cognizable
claim."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.
2001), *cert. denied sub nom. Cloud v. United States*, 536 U.S. 960
(2002), *cited for that proposition in Baisden v. I'm Ready
Productions*, No. Civ. A. H-08-0451, 2008 WL 2118170, *2 (S.D. Tex.
May 16, 2008).  *See also ASARCO LLC v. Americas Min. Corp.*, 382
B.R. 49, 57 (S.D. Tex. 2007)("Dismissal "'can be based either on a
lack of a cognizable legal theory or the absence of sufficient
facts alleged under a cognizable legal theory.'" [citation
omitted]), *reconsidered in other part*, 396 B.R. 278 (S.D. Tex.
2008).

Here Plaintiffs have attached copies of numerous relevant
documents to their Second Amended Complaint, which the Court has
examined in reviewing the motion to dismiss for the factual
challenge under Rule 12(b)(1) and failure to state a claim for
which relief can be granted under Rule 12(b)(6).

### Eleventh Amendment Immunity

Eleventh Amendment immunity must be resolved before the court
reaches the merits of a suit.  *United States v. Tex. Tech. Univ.*,
171 F.3d 279, 285-86 & n.9 (5th Cir. 1999).  The Eleventh Amendment

provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).   Absent a waiver of immunity by a state or through a federal statute, the Eleventh Amendment bars suits against states and state agencies for money damages or injunctive relief.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); *Quern v. Jordan*, 440 U.S. 332, 337 (1979)(sovereign immunity protects a state from "a suit in federal court by private parties seeking to impose a liability which must be paid from public funds"); *Cory v. White*, 457 U.S. 85, 91 (1982); *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986).  *See also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002)(The Eleventh Amendment bars "an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity."). "Congress may only abrogate a state's Eleventh amendment immunity by 'unequivocally' expressing its intent to do so and by acting 'pursuant to a valid exercise of power.'" *Cozzo v. Tangipaphoa Parish Council–President Government*, 279 F.3d 273, 281 (5th Cir.

2002), *citing Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 634 (1999).   The Eleventh Amendment's "withdrawal of jurisdiction effectively confers an immunity from suit." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).   Therefore "an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state.   *Id., citing Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).   Nor are a State's agencies subject to suit in federal court, absent waiver of immunity by the State.   *Id.   See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984)("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").   "This bar remains in effect when State officials are sued for damages in their official capacity" because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)(internal quotation marks and citations omitted).[5]   The Texas DPS is a Texas state agency entitled to Eleventh Amendment immunity. *Carty v. Texas Dept. of Public Safety*, Civ. A. No. 2-06-

---

[5] An exception is the *Ex parte Young* doctrine, which allows federal jurisdiction over a suit against a state official in certain situations where the suit seeks only prospective relief in order to end a continuing violation of federal law. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 73 (1996), *citing Ex Parte Young*, 209 U.S. 123 (1908); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004).

CV-138 (TJW), 2006 WL 3332589, *4 (E.D. Tex. Oct. 6, 2006).

Because the DPS Defendants are sued solely in their official capacities, they are entitled to Eleventh Amendment immunity from Plaintiffs' claims for monetary damages and retrospective relief.

The Eleventh Amendment does allow suits for prospective injunctive relief against state officials in their official capacities acting in violation of federal law. *Ex parte Young*, 209 U.S. 123 (1908); *Milliken v. Bradley*, 433 U.S. 267, 289-90 (1977). The *Ex parte Young* doctrine is "necessary to 'permit federal courts to vindicate federal rights'" and rests on a "fiction"[6] that "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Virginia Office for Protection and*

---

[6] As explained in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 102,

> The Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not one against the State. . . . *Ex parte Young*, 209 U.S. 128 . . . , in which a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment. This Court held that the Eleventh Amendment did not bar issuance of this injunction. The theory of the case was that an unconstitutional enactment is "void" and therefore does not "impart to [the officer] any immunity from responsibility to the supreme authority of the United States." *Id.*, at 160 . . . . Since the State could not authorize the action, the officer was "stripped of his official or representative character and [was] subjected to the consequences of his official conduct." *Ibid.*

-18-

*Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011).  The doctrine "does not apply 'when 'the state is the real, substantial party in interest,' . . . as when the 'judgment sought would expend itself on the public treasury or domain, or interfere with public administration.'" *Id., citing Ford Motor Co. v. Dept. of Treasury of Ind.*, 323 U.S. 459, 464 (1945).  Federal courts may not award retrospective relief for money damages or their equivalent if the State invokes its sovereign immunity.  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004), *citing Edelman*, 415 U.S. at 668. Before the doctrine of *Ex parte Young* can apply, the court must find that there is an ongoing violation of federal law and that the relief sought is properly characterized as prospective.  *Verizon Maryland, Inc. v. Public Serv. Com'n of Maryland*, 535 U.S. 635, 645 (2002).

### Section 1983 and Sovereign Immunity

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 28 (1988).  The Supreme Court has held that states and state agencies are not persons subject to suit under § 1983 and may not be sued for damages or other retrospective relief. *Will v. Michigan Dep't of State Police.*, 491 U.S. 58 (1989).  When sued in his official capacity for injunctive relief, however, a

state official is a "person" under § 1983 because "official capacity actions for prospective relief are not treated as actions against the State." *Id.* at 167 n.14.

To bring a procedural due process claim under § 1983 a plaintiff must first identify a protected life, liberty or property interest and then show that governmental action resulted in a deprivation of that interest. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). To state a claim for violation of procedural due process a plaintiff must allege (1) the deprivation of a protected property or liberty interest and (2) that the deprivation occurred without due process of law. *Grimes v. Pearl River Valley Water Supply Dist.*, 930 F.2d 441, 444 (5th Cir, 1991). Thus a procedural due process claim requires a two-step analysis: (1) does the plaintiff have a life, liberty, or property interest that is entitled to procedural due process protection and, if so, (2) what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1983).

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. . . ." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Before a state deprives an individual of a

-20-

protected property interest, procedural due process requires that
the state provide the property owner notice and an opportunity to
be heard. *Sys. Contractors Corp. v. Orleans Parish Sch. Bd.*, 148
F.3d 571, 575-76 (5th Cir. 1998).

> The Supreme Court opined in *Roth*, 408 U.S. at 577,

> To have a property interest in a benefit, a person
> clearly must have more than an abstract need or desire
> for it.  He must have more than a unilateral expectation
> of it.  He must, instead, have a legitimate claim of
> entitlement to it.

Procedural due process "does not protect everything that might be
described as a government 'benefit':  'To have a property interest
in a benefit, a person must . . . have a legitimate claim of
entitlement to it.'" *Town of Castle Rock, Colo. v. Gonzales*, 545
U.S. 748, 756 (2005), *quoting Roth*, 408 U.S. at 577.  "A benefit is
not a protected entitlement if officials have discretion to grant
or deny it." *Id.*, *citing Kentucky Dept. of Corrections v.
Thompson*, 490 U.S. 454, 462-63.  "A claim to entitlement arises .
. . when a statute or regulation places substantial limits on the
government's exercise of its licensing (or permitting) discretion.
No discretion in the official and a reasonable expectation in the
citizen are central elements of a protected property interest."
*Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221,
226 (5th Cir. 2008), *citing Castle Rock, 545 U.S. at 756.  See also
Chavers v. Morrow*, 354 Fed. Appx. 938, 941 (5th Cir. 2009)("'To
determine whether statutes or regulations create a protected

property interest, we must ask whether they place substantive limitations on official discretion."), *citing Ridgley v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008), *quoting Olim v. Wakinekona*, 461 U.S. 238, 249 (2005). *See also Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)(finding that Mississippi law expressly committed approval of bail bonds to the discretion of the responsible officer which left appellant soliciting bond agent with no property interest in having her bonds accepted by Pontotoc County).

Substantive due process "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987). Unlike procedural due process, the right to substantive due process prohibits "'arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990), *quoting Daniels v. Williams*, 474 U.S. 327, 331 (1986). To state a substantive due process claim a plaintiff must first demonstrate that he has a valid property interest in a benefit that was entitled to constitutional protection at the time he was deprived of the benefit. *Vineyard Inv., LLC v. City of Madison, Miss.*, 757 F. Supp. 2d 607, 612 (S.D. Miss. 2010). To state a claim for violation of substantive due process, the plaintiff must allege facts that "demonstrate that the state official acted with culpability beyond mere negligence." *McClendon*

*v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002).  "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 325-26.  It must allege an abuse of power that "shocks the conscience." *Id.* at 326.

Although Congress has the power to abrogate immunity through the Fourteenth Amendment, Congress has not expressly waived sovereign immunity for § 1983 suits.  *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979); *Ross v. Texas Educ. Agency*, 409 Fed. Appx. 765, 768-69 (5th Cir. Feb. 1, 2011); *Moore v. Texas*, No. 3:11-CV-0749-M-BH, 2011 WL 6968294, *2 (N.D. Tex. Dec. 14, 2011), *citing inter alia Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Although a State may waive its immunity by consenting to suit, Texas has not waived its immunity by consenting to suit in federal court in the Texas Tort Claims Act for § 1983 claims.  *Id. See also Bailey v. Dallas County*, Civ. A. No. 3:09-CV-0865-K, 2012 WL 1033502, *26 (N.D. Tex. Mar. 28, 2012), *citing Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009)(Texas Tort Claims Act, Texas Civ. Prac. & Rem. Code Ann. § 101.001, *et seq.*,[7] does not

---

[7] The Texas Tort Claims Act waives immunity for three kinds of claims, none of which is applicable here:  (1) claims arising from the operation or use of motor-driven vehicles or equipment; (2) claims caused by a condition or use of tangible personal property or real property; and (3) claims arising from premise defects.  Tex. Civ. Prac. & Rem. Code §§ 101.021(1) and (2) and 101.022.  The Texas Tort Claims Act does not apply to claims arising out of an intentional tort, Tex. Civ. Prac. & Rem. Code § 101.057(2), or negligent failure to train, § 101.021(2).  Claims of negligent hiring, training and supervision do not fall within the limited waiver.  *Kesler v. King*, 29 F. Supp. 356, 377 (S.D. Tex. 1998)

apply to claims arising out of intentional torts or claims of failure to train or supervise), and *Holland v. City of Houston*, 41 F. Supp. 2d 678, 711 (S.D. Tex. 1999)(claims involving medical care and failure to train do not involve tangible property so sovereign immunity is not waived under the Texas Tort Claims Act).

### Standing

Federal court jurisdiction is limited to cases and controversies under Article III of the United States Constitution. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).

Standing is a jurisdictional matter that must be found before the merits of a case can be addressed by a court. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-102 (1998); *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 303 (5th Cir. 2001). For each claim, a plaintiff must demonstrate that he satisfies the three constitutional requirements for standing: (1) injury in fact; (2) causation; and (3) redressibility. *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); Cox, 256 F.3d a 303. An "injury in fact" occurs when there is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. A plaintiff

demonstrates causation by showing that the injury is "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Cox*, 256 F.3d at 304, *quoting Simon v. Easter Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).   To demonstrate redressibility, the plaintiff must show that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision."  *Id*.

### Defendants' Motion to Dismiss (#19)

Defendants contend that Plaintiffs lack standing to seek declaratory or injunctive relief because they cannot meet the "additional requirement . . . that  they are likely to suffer future injury by the defendants and that the sought-after relief will prevent that future injury." *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001), *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Lyons*, 461 F.3d at 102.  They maintain that Plaintiffs do not allege any threat of future injury, but rely only on past injuries based on the alleged deprivation of their rights to HMGP funds.  They do not allege any "real or immediate threat that [they] will be wronged again" by DPS Officials.

The Court disagrees.  The claims against the Galveston officials for money damages, including their demand for the funds

that are currently being denied to them, are barred by Eleventh Amendment immunity.[8]   Nevertheless, the complaint indicates that the deprivation is ongoing because Defendants are continuing to investigate the alleged fraud and Plaintiffs' qualifications.   It does not state that a final decision has been made on their application for the HMGP funds.   In praying for declaratory relief they seek, *inter alia* a declaration (1) "whether the DPS Officials may deny Plaintiffs the right to substantiate their qualifications to receive the HMGP Funds;" and (2) "whether the DPS officials are required to allow Plaintiffs to resubmit SDDs in order to substantiate and/or prove their entitlement to the HMGP Funds." #17, ¶ 86.   Plaintiffs can seek prospective relief against these DPS Officials.   So the core underlying issue here is whether they have stated, and whether they can state, a due process claim under § 1983 against these Defendants for the right to an opportunity to be heard and to participate in the DPS' ongoing investigative process.

DPS officials contend that Plaintiffs lack a constitutionally protected property interest in, and entitlement to, the HMGP funds, which is the foundation of their complaint.   They claim a property right based on Section 404 of the Stafford Act, 42 U.S.C. § 5170c, and its implementing regulations.   There is no entitlement to a

---

[8] The Court does not address immunity as to FEMA since it is not a party to this action.

-26-

government benefit if the official has the discretion to grant or deny it. *Castle Rock*, 545 U.S. at 756. To determine whether a statute and its regulations limit official discretion, the court must look for "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'" *Ridgley*, 512 F.3d at 735-36, *quoting Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462-63 (1989).

DPS Officials assert that there is no explicitly mandatory language in the statute or implementing regulations limiting official discretion that would create any property interest in the HMGP funds. Section 404 of the Stafford Act, which establishes the Hazard Mitigation Grant Program and sets forth the terms and conditions for applicant States who wish to administer an HMGP project, limits the federal government's and/or the State Officials' discretion in determining which properties to include in a HMGP project. Nor does anything in the statute dictate that if a property qualifies for a HMGP project, the applicant (DPS) has no discretion in determining if the property will participate in the program. The statue provides that the government "may contribute up to 75 percent of the cost of hazard mitigation measures" and "may provide property acquisition and relocation assistance for projects that meet the requirements" of the HMGP program. 42 U.S.C. § 5170c(b). States are allowed, but not required, to submit

an application to administer a hazard mitigation program, under Section 404.  42 U.S.C. § 5170c(c)(1).  The few directives in that section address what is to be done with properties selected for the program, e.g., that any property acquired under the program "will be dedicated and maintained in perpetuity for a cause that is compatible with open space, recreational, or wetlands management practices."  42 U.S.C. § 5170c(b)(2)(B).  Nothing in the statute dictates to applicants which properties are to be included in the program nor otherwise grants an entitlement to property owners to participate.  Moreover, Title 44, Section 80.5 of the Code of Federal Regulations sets out the roles and responsibilities of various parties, including FEMA, the State, the subapplicant/subgrantee (the City), and the property owners.  44 C.F.R. § 80.5.  The State is given wide discretion in administering the program, include "[e]nsuring that applications are not framed in a manner that has the effect of circumventing any requirements" of the program and "[r]eviewing proposals for subsequent transfer of property interest and obtaining FEMA approval of such transfers, and ensuring that all use proposed for the property are compatible with open space project purposes."  44 C.F.R. § 80.5(b).  Nothing in the regulations dictates that qualified property owners are entitled to participate in the program or limits the State's discretion in determining a property owner's qualifications for the program or reviewing those qualifications at any time in the

-28-

process.  In sum, Plaintiffs have no entitlement to HMGP funds or a property right to such funds.

DPS Officials cite several cases supporting their argument that the statute and its regulations contain no explicitly mandatory language that would entitle an individual to receive benefits that would give rise to a property interest. *Ridgley*, 512 F.3d 727 (5th Cir. 2008)(reversing trial court's granting of preliminary injunction requiring continued assistance in rental payments under section 408 of the Stafford Act because plaintiffs failed to establish a likelihood of success in showing a property interest); *Johnson v. FEMA*, 393 Fed. Appx. 160, 161 (5th Cir. 2010)(affirming denial of preliminary injunction relating to temporary emergency housing relief), *citing St. Tammany parish ex rel. Davis v. FEMA*, 556 F.3d 307, 324-25 (5th Cir. 2009)(affirming district court's denial of preliminary injunction because Johnson "failed to show any likelihood of success on the merits" and finding that the language in the Stafford Act that "Federal agencies *may* . . . provide assistance . . ." was "cast in discretionary terms,"); *Carraway v. United States*, Civ. No. 09-1526, 2010 WL 2737161, *5 (W.D. La. July 9, 2010)(holding that section 408 of the Stafford Act does not create property interest in assistance for property damage); *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 719 F. Supp. 2d 677, 687-88 (E.D. La. 2010).

As a final note, DPS Officials assert that their actions were

-29-

rationally related to a legitimate governmental interests that undermines any claims that their action was arbitrary and capricious. They received an inquiry from a Homeland Security agent about potential fraud in the acquisition of Plaintiffs' homes, so they instructed the City to cease all activities regarding the purchases "pending further investigations" and new SSD reviews. Plaintiffs allege no facts to support their conclusory charges that the DPS Officials "engaged in a campaign to prevent Plaintiffs from participating in HMGP" and "continu[ing] to discriminate against Plaintiffs." They do assert that DPS officials responded to allegations of fraud received through Homeland Security.

In response Plaintiffs rely on a single case, *McWaters v. FEMA*, 436 F. Supp. 2d 802, 816 (E.D. La. 2006), in which the court, examining whether the statute placed substantive limitations on official discretions, stated that "there may be a property interest created by the Stafford Act and protectable under the Due Process Clause." It concluded that the statute "require[d] FEMA to automatically provide assistance to *all* applicants deemed *eligible*" and thus "eligible applicants have the 'legitimate claim of entitlement' necessary to create a constitutionally protected property right" to housing assistance." *Id.* at 818.

The DPS Officials argue that *McWaters* is no longer good law after *Ridgley*, 512 F.3d at 736 (finding mandatory language wholly

absent from the provisions for assistance and implementing
regulations: "There is simply no indication that the regulations
constrain FEMA's discretion to the point that it is bound to
provide assistance to all eligible individuals")).   DPS Officals
are not alone.   In *In re FEMA Trailer Formaldehyde Prods. Liab.
Litig.*, Civ. A. No., 2010 WL 2010487, *6 & n.15 (E.D. La. May 18,
2010), the court wrote,

> While Plaintiffs rely upon *McWaters* . . . for the
> proposition that FEMA is compelled to render housing
> assistance under the Stafford Act, this Court first notes
> it is not bound by another district court decision.
> Further, the language in *McWaters* on this issue is
> significantly weakened by the Fifth Circuit's decision in
> *Ridgley*, which was rendered two years after the *McWaters*
> opinion.  Indeed, this Court has previously stated, "[A]s
> for the applicability of the *McWaters* case to the
> scenario before this Court, it should be noted that the
> Fifth Circuit recently held that the Stafford Act, and
> its accompanying regulations governing the Individual
> Assistance housing program, even for persons who qualify
> for housing assistance, does not, in and of itself,
> create an entitlement to housing assistance."  *In re:
> FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2008 WL
> 5423488 (E.D. La. 2008)(citing *Ridgley*, 512 F.3d at 734-
> 35[]).  Further, *McWaters* . . . dealt specifically with
> the continuation and administration of certain programs
> already set in place.  *Id*. at 236.  This Court agrees
> that even if the Government had established a pattern or
> practice of providing emergency shelter to certain
> qualified individuals, this does not make its decision to
> initially provide shelter any less voluntary.

*See also Lockett v. FEMA*, 836 F. Supp. 847, 854 (S.D. Fla.
1933)(concluding after Hurricane Andrew that the Stafford Act
"clearly shows that assistance is discretionary, not mandatory").

The Court concludes that Plaintiffs have failed to demonstrate
that they have a legitimate property interest sufficient to support

their due process violation claims even for prospective injunctive relief.

Moreover, because they have already had three "bites of the apple," to each of which the DPS Officials have filed motions to dismiss, the Court does not grant leave to amend again.

Accordingly, the Court

ORDERS that Defendants' motion to dismiss (instrument #19) is GRANTED under Federal Rule of Civil Procedure 12(b)(6).

**SIGNED** at Houston, Texas, this __12th__ day of __March__, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE