IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LARRY BISHOP, CYNTHIA BISHOP,      §
GEORGE CLARK, DEBORAH CLARK,       §
KRIS B. HALL, HOLLY J. JONES,      §
GARY MCGREGOR, TERI MCGREGOR,      §
SOLEDA PINEDA, JOHN STANFORD,      §
JR., and CAROL M. SEVERANCE,       §
                    Plaintiffs,    §
VS.                                §     CIVIL ACTION H-11-4152
                                   §
CITY OF GALVESTON, TEXAS, STEVEN   §
C. McCRAW, in his official         §
capacity as the Director of the    §
Texas Department of Public         §
Safety, JEFF COLLEY, in his        §
official capacity as the Chief     §
of the Emergency Management        §
Department of the Texas Depart-    §
ment of Public Safety, GREG        §
PEKAR, in his official capacity    §
as the State Hazard Mitigation     §
Officer of the Emergency           §
Management Division of the Texas   §
Department of Public Safety, and   §
HILDA SOPER, in her official       §
capacity as an employee of the     §
Emergency Management Division of   §
the Texas Department of Public     §
Safety,                            §
                    Defendants.    §

## OPINION AND ORDER

Pending before the Court in the above referenced cause, grounded in the Fourteenth Amendment, 42 U.S.C. § 1983, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and 42 U.S.C. § 5170(c), and alleging deprivation without due process of funds authorized and approved pursuant to the Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), 42 U.S.C. §§ 5101, *et seq.,* and Federal Hazard Mitigation Grant Program ("HMGP")

for acquisition of Plaintiffs' homes in The Sands of Kahala Beach subdivision on the west end of Galveston Island, which were damaged by Hurricane Ike, is Defendant the City of Galveston, Texas' motion to dismiss Plaintiffs' Second Amended Original Complaint under Fed. R. of Civ. P. or, alternatively motion for summary judgment under Rule 56 (instrument #34).

The City of Galveston ("the City") is the sole remaining Defendant in this suit.[1]

### Allegations of the Second Amended Complaint (#17)

Plaintiffs own homes in The Sands of Kahala, a subdivision on the west end of Galveston Island in the City and County of Galveston, Texas. Their real properties were damaged by Hurricane Ike on September 13, 2008. President Bush declared Galveston County, *inter alia*, to be a disaster area and thus automatically qualified it under the Stafford Act for individual assistance, including under the HMGP, which is authorized under Section 404 of

---

[1] Defendant the Texas Department of Public Safety was voluntarily dismissed under Rule 41(a)(1)(A)(I) by Plaintiffs without prejudice on February 15, 2012 (#10 and 11).

In its Opinion and Order of February 25, 2013 (#28), the Court granted a motion to dismiss for failure to state a claim filed by filed by Defendants Steven C. McCraw, in his official capacity as Director of the Texas Department of Public Safety ("DPS"), W. M. Nim Kidd, in his official capacity as Chief of the Division of Emergency Management, Division of DPS, Greg Pekar, in his official capacity as the State Hazard Mitigation Officer of the Emergency Management Division of the DPS, and Hilda Soper, in her official capacity as an employee of the Division of Emergency Management at DPS (collectively, "DPS Officials").

Plaintiff Soledad Pineda was dismissed without prejudice from this action on December 5, 2012 at her own request pursuant to Rule 41(a)(1)(A)(I).  #23, 25.

the Stafford Act, 42 U.S.C. § 5170c, to provide grants to state and local governments to reduce the risk of future damage, hardship, and loss from all hazards.  The HMGP permits applicants/grantees to acquire flood-damaged property.

On January 22, 2009 the Galveston City Council approved and authorized the Galveston City Manager to proceed with an application for HMGP funds to purchase certain beach front homes, with "the local grant share to be paid by others besides the city." Plaintiffs applied and, after inspections, their real properties were determined by the City to qualify for acquisition under the HMGP, as confirmed by letters from the City ("Substantial Damage Determinations" or "SDD Letters").  After conducting investigations and determining that the property was substantially damaged by the hurricane, the City applied to the Texas DPS, Texas Division of Emergency Management, for the funds under the HMGP.  Of the funds obtained by the City, 75% came from the Federal Emergency Management Agency ("FEMA") through the HMGP and $65,000 per home from the Texas General Land Office; none of the funds came from the City.[2]  On July 23, 2009 the United States Department of Homeland Security, FEMA Region 6, notified Defendant Colley, then Chief of the State of Texas Governor's Division of Emergency Management, that the City of Galveston had been awarded a grant in the amount

---

[2]  When Texas DPS applied to FEMA for the grant, it was characterized as the "Applicant";  once the funds were approved by FEMA and the State of Texas under FEMA Project No. DR-1791-012, DPS became the "Grantee" and the City of Galveston the "Sub-applicant"; once the funding was awarded, the City became the "Sub-grantee."

of $15,333,770 for acquisition and demolition of certain property through the HMGP under FEMA Project No. 1791-012.  Colley informed Lyda Ann Thomas, then Mayor of the City, of the grant on July 31, 2009.  Concurrently the City was notified that it also would receive $5,456,032.00 from FEMA and the State of Texas for Project No. DR-1791-013.  Attached to each notice was a list of the real properties that had qualified and that FEMA had approved for acquisition.  Four of the Plaintiffs' six properties were approved under Project No. 1791-DR-TX, while the other two were approved under Project No. DR-1791-012.

Under the terms of the grants (DR 1791-012 and DR 1791-013, collectively "FEMA grants"), the City was to acquire a total of 62 homes.  As of August 31, 2011, the City had acquired all but the six homes owned by Plaintiffs.  The notification letters from FEMA stated, "The Projects must be completed within twenty-four (24) months from the Project approval date."

Plaintiffs executed Grant Agreements with the City of Galveston to purchase their properties.  Plaintiffs contend that as of July 31, 2009, when the City was notified that the FEMA Grants had been approved, Plaintiffs had a vested property interest in the receipt of these funds granted by FEMA for acquisition of their property.  Moreover a letter dated July 23, 2009 from FEMA to Jeff Colley, Chief of the State of Texas Governor's Division of Emergency Management, stated, "Once drawn down by the Grantee, the funds must be distributed in this manner.").

On January 11, 2010, a Flood Damaged Property Contract for Sale with the City to acquire the Bishop-Clark property for $868,541.73 was signed. On September 15, 2009 the Halls' contract for sale for $789,110.96 was executed. On or about the same day the McGregors' contract was entered into for $886,762.38, and Severance's was entered into for $812,508.69. The City also agreed to acquire Soledad Pineda's property and Stanford's property for 75% of their pre-Hurricane Ike appraised values plus $65,000, less any insurance reimbursements. At the time that each contract was executed, Plaintiffs maintain that they had met all requirements or qualifications under the Stafford Act and were entitled to receive the HMGP funds.

Nevertheless commencing in August 2009, owners of other homes in the subdivision along with the City of Galveston and the DPS Officers began campaigning to prevent Plaintiffs from participating in the HMGP, making allegations that the Plaintiffs' properties did not qualify and threatening litigation against the City. Despite its prior approval of the acquisition of Plaintiffs' properties, the Plaintiffs assert that the City arbitrarily demanded that Plaintiffs obtain a release from The Sands of Kahala Beach Home Owners Association, Inc. ("HOA") affirming that the City of Galveston would not be required to pay any maintenance fees provided for in the deed restrictions applicable to the Subdivision. Plaintiffs claim that this action was intended to delay and prevent them from receiving the HMGP funds because, as a

governmental subdivision, a municipality, the City would have immunity from such claims so there was no need for such a release. No other grantee and/or sub-grantee has been required to obtain any type of release and/or have any other conditions been imposed upon a participant in the HMGP beyond those required by the Stafford Act. Plaintiffs assert that Galveston never intended to proceed, nor has it proceeded, with acquisition of Plaintiffs' real properties.

On June 29, 2011, Defendant Pekar notified the City that he had received an inquiry from a Special Agent with Homeland Security, Office of the Inspector General, concerning "potential fraud" involving five of the not-yet-purchased properties and directing the City to "cease all activities concerning the purchase." On June 30, 2011, with only 23 days remaining from the original project completion date, the City requested that the FEMA grants be extended through August 31, 2011. The complaint states that at some point before June 30, 2011 owners of homes in the Subdivision made allegations to various law enforcement agencies, including the Department of Homeland Security and the FEMA Fraud Hotline, that Plaintiffs had used inflated or fraudulently obtained estimates of their real properties and did not otherwise qualify for the HMGP funds.

On August 8, 2011 counsel for the City notified Plaintiffs that they were to have closed on the sales of their real properties before August 1, 2011. Moreover claiming it needed time to fulfill

obligations under the HMGP, the City arbitrarily imposed a 30-day period to do so, which Plaintiffs insist they were not aware of and which was not required by or related to the HMGP and/or the FEMA Grants.  Plaintiffs maintain that they met all qualifications for entitlement to the funds during the relevant time and had clear title.  The City has refused to acquire Plaintiffs' real properties and to close.

On October 25, 2011 Texas DPS, through Defendant Kidd, issued a report on the purported investigation to Special Agent Perry of Homeland Security about the SDD conducted by the City.  The report, with no finding of fraud by any Plaintiff, stated that DPS "will require new substantial damage determination reviews by qualified staff before those addresses will be allowed to participate."  Up until then, Plaintiff had never received any notification from the City or DPS that the City's SDDs were irregular or questionable.  Plaintiffs maintain that they were not given an opportunity to submit new SDDs and/or otherwise prove their entitlement to the HMGP funds, nor to participate in the alleged investigation, nor notified and afforded an opportunity to be heard at any of these proceedings.  Instead their right to participate in the HMGP has been thwarted for at least three years by a concerted effort involving the City, complaining owners of other homes in the Subdivision, and DPS officials.

Plaintiffs allege violations of procedural and substantive due process under the Fourteenth Amendment and 42 U.S.C. § 1983, and

they seek monetary damages, declaratory relief, and prospective injunctive relief (#17, ¶ 90) requiring

> (a) the DPS Official and/or the City of Galveston to comply with the terms of the Stafford Act and the HMGP and fulfill their obligations therein to remit to the Plaintiffs the FEMA Grant to which they have been previously determined to be qualified for [*sic*] and entitled to by FEMA;

> (b) the DPS Officials and/or the City of Galveston to allow the Plaintiffs to demonstrate their qualifications for and/or entitlement pursuant to the Stafford Act and the HMGP and require the fulfillment of their obligations to remit to the Plaintiffs the FEMA Grant; and

> (c) the DPS Officials to retract or, alternatively, afford Plaintiffs their right to present evidence or otherwise demonstrate their entitlement to and qualifications for receipt of the HMGP Fund.

### Standards of Review

**Federal Rules of Civil Procedure 12(b)(1), 8(a), 12(b)(6) and 56**

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Crenshaw-Logal v. City of Abilene, Texas*, No. 11-10264, 2011 WL 3363872, *1 (5th Cir. Aug. 4, 2011), *quoting Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *see also Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir. Mar. 15, 2011); Fed. R. Civ. P. 12(h)(3).  If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal*,

2011 WL 3363872, *1, *quoting Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).  The reasons behind this practice are to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'".  *Id.*, *citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998), and *Ramming*, 281 F.3d at 161.

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998). Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247–48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for

the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252.  The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id., quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S.  at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

### City of Galveston's Motion (#34)

Plaintiffs claim that the City of Galveston ("the City") deprived them of procedural and substantive due process rights under the Fourteenth Amendment when it stopped them from receiving their approved "FEMA grants" and of their "constitutionally protected" property interests granted under the Stafford Act. Having previously sought money damages for the City in two other suits in state court,[3] they again seek them here.  They also seek

---

[3] The City identifies these suits, #34, p. 2 n.5 and attaches pertinent documents as Exhibits A-X, and observes that the Court can take judicial notice of matters of public record in state court

a declaration that the City engaged in an unlawful taking and an injunction requiring the City to comply with the Stafford Act and remit the FEMA grant funds to them.

Plaintiffs contend that the claims against it mirror those against the DPS Officials, which were dismissed because "Plaintiffs . . . failed to demonstrate that they have a legitimate property interest" in the Federal Hazard Mitigation Grant Program ("HMGP") funds, an essential element of all of their claims. #28 at p. 32. Thus the City argues it should be dismissed for the same reasons as the DPS Official.   The Court hereby incorporates its Opinion and Order of March 12, 2013 (#28) into this Opinion and Order.

Alternatively the City argues that it is entitled to summary judgment on two grounds.  First, there is no direct cause of action against the City under the United States Constitution and thus their due process claims under the Fourteenth Amendment are not cognizable as a matter of law. *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir.)(proper vehicle for claims under the First and Fourteenth Amendment is 42 U.S.C. § 1983), *cert. denied*, 512 U.S. 1207 (1994), *citing Hearth, Inc. v. Dept. of Public Welfare*, 617 F.2d 381, 382-83 (5th Cir. 1980)(*per curiam*); *Garrett v. City of Houston*, 102 Fed. Appx. 863, 864 (5th Cir. 2004)(*per curiam*).

---

proceedings.  *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).  The City represents that both suits have been dismissed, one with the court sustaining the City's plea to the Court's jurisdiction (Ex. A) and the other by Plaintiffs after the City moved to dismiss on jurisdictional grounds (Ex. X).

Second, as a matter of law Plaintiffs have no constitutionally protected interest in funds under the HMGP or the Stafford Act. Therefore their claims under 42 U.S.C. §§ 1983 and 1985 also fail.

The City emphasizes that although it is authorized to, it has discretion to determine whether to participate in purchasing eligible flood damaged properties within the City under the HMGP using federal and state funds. Attached to Complaint, #17-1 and 17-2 (award letters stating that under the Program the City was "authorized," but not "obligated" to purchase the properties; see also #34, Appendix, Ex. E, October 8, 2009 Minutes of the Regular Meeting of the City Council of the City of Galveston. With supporting documents the City explains that after the Sands of Kahala HOA notified the City that if it acquired any such properties, it would incur financial liability to the HOA for such matters and future maintenance fees and assessments,[4] the City Counsel voted on whether to authorize the purchase of some of the properties in October 2009 and expressly conditioned its purchase of any such property on each homeowner's obtaining a waiver/release from his or her homeowner's association to exempt the City from any such future financial obligations. *Id.*, Ex. E, ¶ 12(K), (M). That exemption was also essential to implement the HMGP requirement that

---

[4] The City found the HOA's warning of liability to be supported by *Harris County Flood Control Dist. v. Glenbrook Patiohome Owners Assoc.*, 933 S.W. 2d 570 (Tex. App.--Houston [1[st] Dist.] 1996, writ denied)(holding that restrictive covenant to pay maintenance assessments ran with the land (i.e., with the patiohomes) that the county flood district purchased and condemned).

the City obtain "full fee title of properties" and that "[a]ll incompatible easements or encumbrances be extinguished." The FEMA Hazard Mitigation Assistance Program Guidance, ¶2.3.13.2.2, *Project Eligibility*; 44 C.F.R. §80.17(b), *Project Implementation*, states,

> (b) Clear Title.  The subgrantee will obtain a title insurance policy demonstrating that fee title conveys to the subgrantee for each property to ensure that it acquires only a property with clear title.  The property interest generally must transfer by a general warranty deed.  Any incompatible easements or other encumbrances to the property must be extinguished before acquisition.

When the City informed the prospective homeowners that it would participate in the HMGP, it made clear in its letters to Plaintiffs (#34, Appendix, Exs. F,G,H, and I) that obtaining a release from the HOA was a condition precedent to the City's agreement to purchase any property:

> As a reminder, when City Council approved moving forward with the buyout program they included the requirement that each owner obtain a release from the HOA before settlement could occur.  Although you are receiving this contract, the HOA release is still a requirement.  It is requested that you fax or mail your HOA release to the following [Telephone Number and Address].  The City will review this release when they review the draft closing documents and will not allow settlement to occur if the HOA release is not part of these draft closing documents.

Furthermore, in a letter dated April 29, 2011, the City reiterated to Plaintiffs that the funding under the HMGP expired on July 23, 2011 and that they had to deliver clear title.  The City further explained that to allow adequate time for it to complete demolition work required under the HMGP after each purchase, it set the deadline for closing purchases of the Plaintiffs' properties on June 23, 2011.  Ex. O.  On June 13, 2011 in a letter of that date

(Ex. P), counsel for the City informed Plaintiffs' counsel that submission of the waiver/release from the HOA exempting the City from liability was a condition precedent to any closing on the Flood Damaged Property Contracts for Sale.[5]

On June 29, 2011 the State of Texas ordered the City to cease all activity relating to the purchase of Plaintiffs' properties and to return the funds relating to them because it had been notified by an agent in the Department of Homeland Security about an investigation into possible fraud involving those properties. Exs. Q, R. The City complied.

In a letter dated June 30, 2011 (Ex. S), the City asked the State to extend until August 1, 2011 the final date by which the homeowners could close the sale of their properties and until August 31, 2011 to close out the grant. The State agreed. But Plaintiffs failed to meet the deadline to deliver the fee simple title to their properties, so it expired, and the State's order to the City to cease all activities under the HMGP remained in effect, as Plaintiffs were advised by a letter dated August 8, 2011 (Ex. U). The program expired on August 31, 2011.

---

[5] At this point Plaintiffs, the City, and the homeowners who had been complaining about Plaintiffs' receiving the funds since 2009 were embroiled in the litigation in state court and the HOA had filed for bankruptcy. On January 13, 2011 the bankruptcy court dismissed HOA's petition with prejudice on the grounds that it was filed "in bad faith and for improper purpose . . . as a litigation tactic designed to accomplish forum manipulation." Appendix, Ex. Y.

-15-

The City maintains that because Plaintiffs did not satisfy the condition precedent by submitting the required waivers/releases with evidence of fee simple title free and clear of all liens and encumbrances and because no closings occurred by the deadline, the City was relieved of its obligation to complete the purchase of the homeowners' properties.  *Christopher Di Stefano & Associates, Inc. v. City of Alvin*, No. 01-91-01291-CV, 1993 Tex. App. LEXIS 2535, *2, 9 (Tex. App.--Houston [1st Dist.] Sept. 16, 1993, no writ)("failure of condition precedent excused performance of the contract by the parties").

The City contends that Plaintiffs have failed to state a claim under Rule 12(b)(6) because they have no constitutionally protectable property interest in, nor entitlement to, the HMGP, an essential element of all their claims and requests for relief, as this Court ruled in its earlier Opinion and Order (#28).

Alternatively the City is entitled to summary judgment because no direct cause of action exists under the United States Constitution and because as a matter of law, Plaintiffs do not have and never did have a constitutionally protected interest in funds under the HMGP or the Stafford Act.

### Plaintiffs' Response (#38)

Plaintiffs repeat the allegations of their complaint.  While Plaintiffs agree that the City had the discretion initially to determine which properties would be included in the HMGP project, they insist that as of July 31, 2009, they had a vested property

-16-

interest in the receipt of the funds which FEMA had granted for the acquisition of their real property.  #34, Appendix, Exs. A and B. It is undisputed that they had properly executed Grant Agreements with the City to purchase their properties.   All of their real properties had been determined to be eligible and qualified for the HMGP funding and were included in the grant from FEMA to the City and the State of Texas.  *Id.*   The City made a binding decision on January 22, 2009 and signed contracts with Plaintiff prior to October 8, 2009.   Plaintiffs cite *State v. Epperson*, 42 S.W. 2d 228, 231 (Tex. 1931) for the following rule:  "while suits for contract damages against the state are generally barred by immunity, where a statute (Stafford Act) requires that government contracts be made or performed in a certain way, leaving no room for discretion, a suit alleging a government official's violation of that law is not barred even though it necessarily involves a contract."  #38 at p. 11, ¶ 38.  They further cite *City of El Paso v. Heinrich*, 284 S.W. 3d 366, 371 (Tex. 2009) for the proposition that "where statutory or constitutional provisions create an entitlement to payment, suits seeking to require state officers to comply with the law are not barred by immunity merely because they compel the state to make those payments."[6]  Plaintiffs reiterate that no other grantee and/or subgrantee in the United States has

---

[6] The City points out this is irrelevant because the City is not asserting government immunity from Plaintiffs' claims, but only their inability to prove the existence of a constitutionally protected property interest in the federal funds.

ever required to obtain any type of release and/or imposed any other conditions upon a participant in the HMGP beyond those required in the Stafford Act.[7]   They charge that "for obvious political reasons," the City never intended to proceed with acquiring their properties.   They further claim that the City's insistence that it needed thirty days after Plaintiffs submitted the releases to meet its obligations under the HMGP was arbitrary, self-imposed, and not otherwise a requirement of, or related to, the HMGP and/or the FEMA Grants.   They also insist that they were never aware of any thirty-day deadline to allow the City to complete demolition work required under the HMGP following each purchase and that the City never raised the argument about that requirement until August 1, 2011.

Plaintiffs challenge this Court's reliance in its dismissal of the DPS official on *Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 739 (5th Cir. 2009), which was an interlocutory appeal of a preliminary injunction requiring FEMA to continue to make rental assistance payments to class members who were displaced from their home by Hurricanes Katrina and Rita until notice, hearing and appeal procedures were provided.   Although the Fifth Circuit found that plaintiffs had "not shown that they can establish a property interest in rental assistance benefits," it vacated the injunction

---

[7] Plaintiffs do not support and the Court knows of no way to check this generalization, but the City has shown (1) case law that under Texas law, without such a waiver/release the City might become liable for future assessments by the HOA and (2) that clear title was required by the HMGP.

and remanded the case for further development on the grounds the plaintiffs might be able to do so based on FEMA's policies and practices to implement the statute and regulations. *Id.* at 735. Moreover the Fifth Circuit stated,

> In the end, we are somewhat limited in our review by the fact that the district court did not hold an evidentiary hearing or otherwise make any findings on these matters before granting the preliminary injunction. . . . Whether FEMA, by its policies and practices, has created a property interest in continued rent assistance is a fact-intensive question, and given the limited factual development below, one we cannot answer."

*Id.* at 740.

Plaintiffs state that in the instant case no discovery has been conducted, and that the policies and practices used in implementing the statute are those not only of FEMA, but also of the City.[8]  Plaintiffs assert that FEMA's policies make compliance with the terms of the FEMA grants mandatory.  They insist that once the City and the DPS Officials submitted and accepted the HMGP funds from FEMA and entered into the written agreements with Plaintiffs, before October 8, 2009, Plaintiffs became entitled to and had a legitimate claim of entitlement arising from the contract and there were "substantive limitations on official discretion." *Ridgely*, 512 F.3d at 735.  Furthermore the disparate treatment of Plaintiffs compared with that of the owners of the 56 properties that were acquired can only be explained by the policies, practices, and/or politics of the City and the DPS officials.

---

[8] Since the DPS Officials have been dismissed, the Court does not address this claim as to them.

**City's Reply (#39)**

The City insists Plaintiffs have not and cannot allege, no less demonstrate, a legitimate interest in HMGP funds, as the Court recognized in its previous Opinion and Order.

The City asserts that Plaintiffs erroneously equate "authorization," which the City ultimately obtained to acquire the hurricane-damaged property under the HMGP, with an "obligation" by the City to do so.  In its motion to dismiss (#34 at pp. 4-7), the City put forth evidence of this mistake:

(1) Plaintiffs have failed to point to any mandatory language in any grant letter or any other document that required the City to purchase their properties simply because it was authorized to acquire them;

(2) No HMGP documentation (statute, regulation, letter, contract, etc.) or governmental practice, whether then in existence or thereafter, created an express mandatory directive that the City acquire the properties listed in the HMGP grant application (*Ridgely*, 512 F.3d at 735-36) ("The 'mere existence of a governmental program or authority empowered to grant a particular type of benefit to one such plaintiff does not give the plaintiff a property right, protected by the due process clause, to receive the benefit, absent some legitimate claim of *entitlement*--arising from statute, regulation, contract or the like--to the benefit.' . . . . To determine

-20-

whether statutes or regulations create a protected property interest, we must ask whether they place 'substantive limitations on official discretion.' Absent such limitations on FEMA's discretion, . . . government officials may grant or deny it in their discretion." [citations omitted]);

(3) HMGP makes clear that the City's authority to acquire property as a sub-grantee of the State of Texas was discretionary and limited by various federal restrictions on any such purchases (#34, Ex. 1 and 2, July 31, 2009 grant letters clearly state that under the HMGP the City was "authorized" to purchase various properties, not "obligated" to do so; the grant funds made available to the City to purchase "eligible properties" were not granted directly to Plaintiffs or any other property owners);

(4) Federal regulations bar the City from purchasing property subject to incompatible liens and encumbrances; in addition as of June 29, 2011, the State, as grantee, forbade the City from purchasing Plaintiffs' properties because of investigation of possible fraud; and

(5) Plaintiffs had no protectable property interest in the federal grant funds, which the City was only authorized to spend in compliance with conditions that Plaintiffs never satisfied.

Nor have Plaintiffs submitted any competent evidence to preclude summary judgment in favor of the City. As noted, their arguments about governmental immunity are irrelevant because the City is not asserting immunity, but is challenging only Plaintiffs' inability to assert a constitutionally protected property interest in the grant funds. Regarding their objections to the City's requirement that they obtain the release of incompatible encumbrances on their properties, the City reiterates that the HMGP and its regulations,[9] in addition to state and municipal contract law, prohibit the City from purchasing Plaintiffs' properties if they were subject to liens. Moreover the City can only contract with express authority conferred by the City Council, which conditioned its offer to purchase every property under the HMGP only after receipt of a release from each homeowner, and that condition was mandatory to comply with the HMGP regulations. Therefore that condition became part of each purchase contract the City entered into as part of the HMGP program, by operation of municipal, state, and federal law. Indeed, under HMGP regulations as a condition of purchasing a property the City had to obtain title insurance demonstrating that the seller had clear title and that any incompatible encumbrances had been extinguished as of the time of closing. Since Plaintiffs failed meet this condition

---

[9]The FEMA Hazard Mitigation Assistance Program Guidance ¶ 2.3.13.2.2, and 44 C.F.R. §80.17(b).

timely, the City had no further contractual obligation to purchase their properties.

Regarding their request for time to develop the record, the City objects that Plaintiffs fail to provide an affidavit or declaration providing specific reasons why they cannot currently present facts essential to justify their opposition to the City's motion for summary judgment. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 719 (5th Cir. 1999); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

### Court's Decision

The Supreme Court has interpreted Rule 56 to require "adequate time" for discovery. *Celotex*, 477 U.S. at 323. Rule 56(d) provides, "If a nonmovant shows by affidavit or declaration that for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order." The Court notes, and as evidenced by the docket sheet and the record, that this case was filed by Plaintiffs on December 1, 2011 on claims that go back to 2009, and had formal discovery ongoing from the date of the original scheduling conference on April 3, 2012 until the stay was entered on February 23, 2013 to allow the Court to resolve the pending motion. "[A] district court has broad discretion over discovery matters and may deny" a request for a continuance "if the party seeking it has failed to pursue discovery

-23-

diligently enough to warrant relief or has failed to justify why the relief should be granted." *Danos v. Union Carbide Corp.*, ___ Fed. Appx. ___, 2013 WL 5587266, at *2 (5th Cir. Oct. 11, 2013), *citing Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001)(the movant "'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts.'")(*quoting Krim v. BancTexas Grp.*, 989 F.2d 1435, 1442 (5th Cir. 1993)). To warrant a continuance the party seeking it must show "(1) why additional discovery is necessary and (2) 'how the additional discovery will likely create a genuine issue of material fact.'" *Id.* The Court finds that Plaintiffs have not offered any reasons or evidence of diligence in pursuing discovery nor of why they need more time and how that extension of discovery would probably create a genuine issue of fact. While they state that discovery is not complete, they did not file a formal motion for continuance under Rule 56(d). *See Ferrant v. Lowe's Home Centers, Inc.*, 494 Fed. Appx. 458, 463 (5th Cir. Oct. 9, 2012)(holding that plaintiff's failure to file a Rule 56(d) motion for continuance for further discovery, she is foreclosed from arguing that she did not have adequate time for discovery). The City's motion clearly asserted both a motion to dismiss and alternatively a motion for summary judgment, so Plaintiffs have had fair notice of the potential need for summary judgment evidence. Moreover Plaintiffs have attached substantial documentation to their complaint and the City has submitted an appendix of documents to which Plaintiffs

-24-

have referred in their briefing.   Thus the Court finds it appropriate under the circumstances to address the motion for summary judgment.

The Court concludes that the City has shown as a matter of law, and the Court agrees, that while the City is authorized to participate in purchasing the flood damaged properties under the HMGP, it also has the discretion whether to do so.   The City has also shown as a matter of law that requiring Plaintiffs to obtain waivers/releases from the HOA was in compliance with the decisions of the City Council of Galveston[10] and the requirements of HMGP,

_____

[10] As noted by the City, #34 at p. 7 n.21,

"It is a well settled rule that the governing authorities of cities can express themselves and bind the cities only by acting together in a meeting fully assembled." *Stirman v. City of Tyler*, 443 S.W. 2d 354, 358 (Tex. App.-Tyler 1969, writ ref'd n.r.e.).   Following this principle, Texas courts have long held that an agreement purportedly made on behalf of a city may not be enforced absent explicit authority for such agreement from the city charter, the city council, or a city ordinance.

*Id., citing City of Laredo v. Macdonnell*, 52 Tex. 511, 523-26, 1880 Tex. LEXIS 20 (1880); *City of Bryan v. Page & Sims*, 51 Tex. 532, 534-36, 1879 Tex. LEXIS 92 (1879); and *City of Bonham v. Southwest Sanitation, Inc.*, 871 S.W. 2d 765, 767-68 (Tex. App. Texarkana 1994, writ denied).
Moreover the City of Galveston, Texas Charter art. II, § 4 (1998) generally vests the powers of the City in the City Council: "All powers and  authority that are expressly or impliedly conferred on or possessed by the City shall be vested and exercised by the Council; provided that the Council shall not exercise those powers that are expressly conferred upon other City Officers by this Charter."   No provision in the City Charter and no City Ordinance vests the authority to enter into contracts with homeowners without express authority from the City Council.   *Id.*
The City's Appendix, Ex. E, § 12(k) shows that City Counsel gave express authority to make obtaining such waivers/releases from the HOA a condition precedent for the purchase of their property;

that Plaintiffs failed to establish a property interest in the HMGP funds, and that Plaintiffs' failure to fulfill this condition precedent released the City from any contractual obligation to purchase their flood-damaged property.  Plaintiffs contend that the condition precedent is contrary the HMGP policy, but do not explain how.  The City has identified the policy and regulations requiring that for any property to be purchased by the City, not just Plaintiffs', the property owner must obtain and submit "full fee title of properties" and that show "[a]ll incompatible easements or encumbrances be extinguished."  FEMA Hazard Mitigation Assistance Program Guidance ¶ 2.2.13.1.2, *Project Eligibility*; and 44 C.F.R. § 80.17(b).

Plaintiffs argue that, pursuant to the Fifth Circuit's ruling in *Ridgely*, 512 F.3d at 739, they should be given more time to show that FEMA's and the City's policies and practices gave them a property interest in the HMGP funds.  The Court disagrees.

The district court in the *Ridgely* class action case incorrectly concluded that the named plaintiffs had a property right in continuing rental assistance[11] from FEMA under section 408

---

therefore the only enforceable contract between the City and Plaintiffs contained this condition precedent.

[11] Under section 408, FEMA can award rental assistance in one payment to cover three months of rent for alternate housing to someone who has been displaced or whose home has been rendered uninhabitable because of a natural disaster; if the individual requires further assistance, he can apply for additional awards, a/k/a "continued rent assistance," also made in 3-month payments. 512 F.3d at 728.

of the Stafford Act and its implementing regulations, assistance
which they had been receiving since Hurricanes Katrina and Rita
displaced them from their homes.   The district court then entered
a preliminary injunction against FEMA barring it from stopping the
payments.   While they, like Plaintiffs in the instant case, argued
that because they had been found eligible and approved for
assistance under the statute's and regulations' criteria, they had
a property right to the rental assistance under the statute, the
Fifth Circuit disagreed.   Instead the panel found they might
possibly have Fifth Amendment due processclaim that their rights
were violated by FEMA's practices in its administration of the
rental assistance program.   The Fifth Circuit observed that while
the regulations required applicants for each recertification for
continued rental assistance to "establish a realistic housing plan
and submit documentation showing their efforts to obtain a
realistic housing plan and submit documentation showing their
efforts to obtain permanent housing, provide past rent receipts to
show that they have exhausted funds previously received from FEMA,
and submit documentation showing a continuing need for assistance,"
in "actual practices, FEMA has at times simplified or relaxed"
these requirements for Katrina and Rita victims.   512 F.3d at 730.
For instance,

> [d]uring the first round of recertifications in late
> November 2005, . . . FEMA required only a signed document
> stating that the applicant had used up his initial award
> and was in need of continued assistance. At other times,
> FEMA had required fuller documentation, including rent
> receipts.   And on one occasion, FEMA waived the

recertification requirements entirely and provided an award of continued rent assistance to every individual who had been deemed eligible during the previous recertification.

*Id.* The named plaintiffs in *Ridgely* who had been receiving rental assistance payments were subsequently found by FEMA to be ineligible for continuing payments and alleged that FEMA administered its program in an arbitrary and inconsistent way in violation of due process. They alleged that FEMA denied applications for recertification by notices with confusing codes rather than clear explanations, operated a system that precluded effective challenges to the decisionmaking before the applicant lost assistance, and failed to disclose the agency's eligibility standards. *Id.* FEMA argued *inter alia* that plaintiffs lacked a property interest, a prerequisite to an due process claim. The plaintiffs moved for class certification and injunctive relief. *Id.* at 731. Both sides submitted contrary documentary evidence in support of their stances. The district court, without holding an evidentiary hearing, granted class certification, rejected the FEMA's lack of property interest argument, and granted a preliminary injunction based on the likelihood that plaintiffs would succeed on their due process claims. *Id.* at 731-34. FEMA filed an interlocutory appeal.

On the appeal, the Fifth Circuit agreed with FEMA that Plaintiffs had not yet made a sufficient showing that they have a property interest under the Stafford Act in the continuing rental assistance benefits to support a due process claim because the

statute and regulations, by themselves, "are not sufficient to create a property interest." *Id.* at 736.

To determine whether a statute and its implementing regulations create a property interest, the panel instructed, "we must ask whether [the statute and its implementing regulations] place 'substantive limitations on official discretion.' Absent such limitations on FEMA's discretion, section 408 and the regulations cannot create a property interest, as 'a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Id.* at 735, quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983), and *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 92205). In determining whether the statute and regulations limit official discretion, the courts are to look for "'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow.'" *Id.* at 735-36, *quoting Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989). The Fifth Circuit found that mandatory language was "wholly absent" from section 408 and the regulations; instead the statute "contains only a permissive grant of authority to FEMA (through the President) to provide rental assistance," using the permissive "*may*" instead of the mandatory "shall." *Id.* at 735-36. The panel concluded that under the statute "an individual has no right to receive rental assistance, even if assistance is being offered and he meets the eligibility criteria." *Id.* at 736.

But because in the record in *Ridgely* there was contradictory testimony raising a fact issue about disparities in FEMA's practice in distributing rental assistance funds that might give rise to a unilateral expectation on the part of the plaintiffs, the panel opined, "The possibility remains that plaintiffs can establish a property interests based on FEMA's policies and practices in implementing the statute and regulations to provide rental assistance." *Id.* Thus it vacated the challenged portions of the preliminary injunction and remanded the case for further proceedings consistent with its decision.

This Court has already agreed with the DPS Officials in its earlier Opinion and Order of February 25, 2013 (#28) that there is no explicitly mandatory language in section 404 of the Stafford Act or its implementing regulations regarding implementation of the HMGP program. Moreover here the City has provided further bases for the discretionary nature of the program. With regard to Plaintiffs' current claims that the City's administration of the funds violated their due process rights, the City has shown with numerous documents from the beginning of the application and award process that it has given Plaintiffs written notice of what was required and repeated warnings about deadlines to do so. It has also established the legality of the condition precedent, which Plaintiffs have failed to controvert. Plaintiffs were told to satisfy the condition precedent of obtaining clear title by a deadline that the City managed to extend to help them, but

Plaintiffs failed to do so.  While Plaintiffs conclusorily claimed that no one else was required to satisfy the condition precedent required of them, they have not alleged any specific identifying facts no less provided any evidence that any other applicants who failed to satisfy the condition precedent of the City and the HMGP were given the HMGP funds.

Accordingly the Court

ORDERS that the City's motion for summary judgment is GRANTED. A final judgment shall issue by separate document.

**SIGNED** at Houston, Texas, this  28th  day of  February , 2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-31-